

**ORDERED in the Southern District of Florida on January 13, 2020.**

_____
**Mindy A. Mora, Judge**
**United States Bankruptcy Court**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | Case No.: 18-15728-MAM |
| SCOTT STORICK,<br>        Debtor.<br>_____/ | Chapter 7 |
| SCOTT STORICK,<br>        Plaintiff, | Adv. Proc. No. 18-01455-MAM |
| v. | |
| CFG LLC,<br>        Defendant.<br>_____/ | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT [ECF NO. 13], DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 28], AND CANCELLING PRE-TRIAL CONFERENCE

**THIS MATTER** initially came before the Court upon *Defendant CFG LLC's*

*Motion to Dismiss Adversary Complaint, or in the Alternative Motion for Summary*

*Judgment and Incorporated Memorandum of Law in Support Thereof* (ECF No. 13)

(the "Converted Motion")[1] filed by creditor CFG LLC ("CFG"), the *Joint Stipulation*

*of Facts Regarding Defendant's Motion for Summary Judgment [ECF No. 13]* (ECF

No. 24) (the "Joint Stipulation"),[2] the response [ECF No. 25] (the "Response") to the

Converted Motion filed by the above-captioned debtor-plaintiff ("Storick"), and the

*Reply Brief in Support of CFG LLC's Motion for Summary Judgment* (ECF No. 27)

(the "Reply").

Immediately (one day) after the parties completed briefing upon the Converted

Motion, Storick submitted a cross-motion for summary judgment (ECF No. 28) (the

"Cross-Motion"). The Court directed the parties to submit additional briefing upon

the Cross-Motion (ECF No. 30). After agreed extensions, the parties submitted *CFG*

*LLC's Response in Opposition to Plaintiff's Motion for Summary Judgment* (ECF No.

52) (the "Cross-Response") and the *Reply in Support of Plaintiff's Motion for*

*Summary Judgment [ECF No. 28]* (ECF No. 58) (the "Cross-Reply").[3]

This opinion and order address the arguments raised in both the Converted

Motion and the Cross-Motion. For the reasons stated herein, the Court grants the

Converted Motion and denies the Cross-Motion.

---

[1] On January 18, 2019, the Court converted the Converted Motion from a motion to dismiss to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012. See ECF No. 17.

[2] ECF No. 26 contains the exhibits to the Joint Stipulation.

[3] On May 17, 2019, the parties filed a second joint stipulation of facts (ECF No. 54) explicitly incorporating by reference the Joint Stipulation previously filed as ECF No. 24.

## BACKGROUND

I.    The Prior Bankruptcy and Amended Settlement Agreement

Nine years before the filing of Storick's current bankruptcy case (Case No. 18-15728, the "2018 Bankruptcy Case"), on September 3, 2009, Storick filed a petition under chapter 7 of the Bankruptcy Code, Case No. 09-28716-JKO (the "2009 Bankruptcy Case"). Storick scheduled CFG as a creditor in the 2009 Bankruptcy Case. After participating in mediation, the parties consensually resolved issues relating to CFG's debt (the "CFG Debt") and the ensuing litigation in the 2009 Bankruptcy Case by entering into a settlement agreement on April 23, 2010 (the "April 2010 Settlement"). The April 2010 Settlement resolved multiple areas of litigation between CFG and Storick, including CFG's then-pending motion to dismiss the 2009 Bankruptcy Case, as well as CFG's anticipated objections to Storick's claimed exemptions, discharge under 11 U.S.C. § 727, and dischargeability of the CFG Debt pursuant to 11 U.S.C. § 523.

Shortly before the hearing (the "Settlement Hearing") upon the motion to approve the April 2010 Settlement, Storick and CFG slightly revised their agreement, as reflected by Exhibit L to the Joint Stipulation (the "Amended Settlement"). Accordingly, the parties presented the Amended Settlement to the Court for approval at the Settlement Hearing.

Paragraph 4 of the Amended Settlement (the "Nondischargeability Provision") provides as follows:

> **CFG DEBT NON-DISCHARGEABLE**: The Debtor agrees that the CFG Debt is a non-dischargeable debt pursuant to the provisions of 11 U.S.C. Section 523(a), which debt shall be excepted from the

3

Debtor's discharge granted pursuant to the provisions of 11 U.S.C. Section 727 in this Bankruptcy Case or any future bankruptcy case in which Storick is a debtor. Any order entered by the Bankruptcy Court approving this Agreement shall include a provision excepting the CFG Debt from the Debtor's discharge in his Bankruptcy Case in accordance with the foregoing sentence.

In addition to the Nondischargeability Provision, the Amended Settlement contained a provision (the "Judgment Provision") outlining the terms by which CFG could reduce the CFG Debt to a post-petition judgment. Paragraph 5 of the Amended Settlement provides:

**CONFESSION OF JUDGMENT**: Debtor hereby irrevocably appoints and constitutes CFG as Debtor's duly appointed attorney-at-law to appear in open court in the Superior Court for the City of Wilmington, Delaware, or in any other court of competent jurisdiction, and to confess judgment pursuant to the provisions of Title 10 Section 4732 of the Delaware Code, as amended, against Debtor for all principal and interest and any other amounts due and payable under this Agreement. This power of attorney is coupled with an interest and may not be revoked and/or terminated by the Debtor. This power of attorney shall not be revoked and/or terminated by virtue of the death or disability of the Debtor. No single exercise of the power to confess judgment shall be deemed to exhaust this power of attorney.

On June 30, 2010, Judge Olson, the bankruptcy judge who presided over the 2009 Bankruptcy Case, entered an order approving the Amended Settlement and granting stay relief to CFG to pursue all available remedies in Delaware. *See* ECF No. 189 in the 2009 Bankruptcy Case, attached to the Joint Stipulation as Exhibit N (the "Settlement Order"). Approval of the Amended Settlement expressly permitted CFG to pursue entry of judgment on the CFG Debt in Delaware. On August 4, 2010, Storick received his discharge in the 2009 Bankruptcy Case. *See* ECF No. 201 in the 2009 Bankruptcy Case (attached as Exhibit O to the Joint Stipulation).

4

II.     The Delaware and Florida Litigation

    A.  Delaware Litigation

On July 16, 2010, CFG sought a confessed judgment against Storick on account of the CFG Debt in the Superior Court of the State of Delaware in and for New Castle County (the "Delaware Trial Court").[4] CFG provided notice to Storick of CFG's request for entry of confessed judgment. The notice informed Storick of the basis for the confessed judgment and the scheduled date and time of a hearing (the "Judgment Hearing") to determine whether judgment should be entered.[5] Storick failed to appear at the Judgment Hearing.

On August 20, 2010, the Delaware Trial Court entered a final order of judgment (the "Delaware Judgment") in favor of CFG.[6] CFG subsequently sought to enforce the Delaware Judgment by garnishing Storick's wages.[7] In response, Storick moved to vacate the Delaware Judgment.[8] As a basis for vacatur, Storick argued that paragraph 13 of the Amended Settlement provided that Florida law controlled operation of the Judgment Provision. Storick further contended that Florida law

---

[4]  The case was styled as *CFG, LLC v. Storick & Associates, Inc.*, Case No. SN09J-07-408 (the "Delaware Litigation"). The Delaware Trial Court entered judgment against Storick & Associates on September 25, 2009 but stayed entry of judgment against Storick individually pending entry of an order modifying the automatic stay in the 2009 Bankruptcy Case. *See* ECF No. 26, Exhibit P (Docket Information Sheet, p. 2).

[5]  *See* ECF No. 26, Exhibit P (Notice Dated July 21, 2010).

[6]  *See* ECF No. 26, Exhibit P (Judgment).

[7]  *See* ECF No. 26, Exhibit Q, ¶ 3.

[8]  *See id.* at ¶ 4.

5

prohibits confessed judgments, rendering the Delaware Judgment a legal nullity.[9]

Storick did not argue that the CFG Debt was or should have been discharged in the 2009 Bankruptcy.

B. Florida Litigation

While the Delaware Litigation remained pending, Storick filed a complaint (the "2012 Complaint") against CFG on February 17, 2012 in the United States District Court for the Southern District of Florida (the "Florida District Court").[10] Initially, the 2012 Complaint set forth only one count: a request for declaratory relief regarding whether Florida Statute § 222.11 ("§ 222.11") protected Storick's wages from CFG's efforts to collect upon the Delaware Judgment via garnishment.

Storick later amended the 2012 Complaint (the "Amended 2012 Complaint") to include an additional count for declaratory judgment as to entry of the Delaware Judgment. By way of the Amended 2012 Complaint, Storick thus sought declaratory relief from the Florida District Court on issues that were still pending before the Delaware Trial Court.[11] As in the Delaware Litigation, Storick did not argue that the CFG Debt was or should have been discharged in the 2009 Bankruptcy.

CFG moved to dismiss Storick's Amended 2012 Complaint. In a detailed seven-page order (the "Florida District Court Order"), the Florida District Court carefully

---

[9] Following this logic, the Amended Settlement provided for entry of a void judgment. It is highly doubtful that experienced counsel negotiated such a result.

[10] The resulting case was styled as *Storick v. CFG, LLC,* Case No. 9:12-cv-80181.

[11] *See* Florida District Court Order (defined herein), at p.2 ("Significantly, Storick has squarely raised both issues in the Delaware garnishment proceeding ….")

walked through each element of a nine-factor test[12] to evaluate discretionary dismissal where a parallel state court proceeding exists concerning the same parties and the same issues of state law.[13] After meticulously examining all factors, the District Court concluded that dismissal of the Florida Litigation was appropriate.[14]

On January 31, 2013, the Eleventh Circuit Court of Appeals affirmed the District Court's dismissal of the 2012 Complaint, effectively rubber-stamping the Florida District Court's declination of jurisdiction over Storick's declaratory judgment action.[15] Basing affirmance upon the reasons stated in the Florida District Court's "well-reasoned" order, the Eleventh Circuit Opinion pointed out that "although Storick accuses CFG of 'procedural fencing' by obtaining a confession of judgment in Delaware, Storick expressly agreed to allow CFG to confess judgment in Delaware for **a long-standing debt he admits he owes**."[16]

Storick did not appeal the Eleventh Circuit Opinion.

C.  <u>The Conclusion of the Delaware Litigation</u>

Approximately six months later, the Delaware Trial Court entered an order (the "<u>Delaware Order</u>") with a thorough and thoughtful analysis of the Delaware

---

[12] *Ameritas Variable Life Insurance Company v. Roach*, 411 F.3d 1328 (11th Cir. 2005) describes the relevant test.

[13] *See* ECF No. 26, Exhibit V.

[14] In the concluding paragraphs, the Florida District Court also noted that CFG had cast doubt upon the merits of Storick's claims before that court. *See id.*

[15] *See* ECF No. 26, Exhibit W (the "<u>Eleventh Circuit Opinion</u>").

[16] *See id.* at p. 3 (emphasis added).

Litigation, addressing all arguments raised by Storick and CFG.[17] The Delaware Order denied Storick's motion to vacate the Delaware Judgment and resolved all issues in the Delaware Litigation in favor of CFG. The Delaware Order describes the CFG Debt as "non-dischargeable", a factual finding that Storick does not appear to have challenged at that time.[18]

Storick moved for reconsideration of the Delaware Order, arguing that (i) Florida Statute § 222.11 should be applied extraterritorially to the Delaware Judgment,[19] and (ii) even if § 222.11 did not apply, the attachment of his wages by CFG was improper pursuant to 10 Del. C. § 4913. A little over one year later, on July 29, 2014, the Delaware Trial Court entered a lengthy memorandum opinion (the "Delaware Opinion") denying reconsideration of the Delaware Order.[20]

Storick appealed the Delaware Order to the Delaware Supreme Court. On March 30, 2015, the Delaware Supreme Court entered a comprehensive 13-page order affirming the decision of the Delaware Trial Court.[21] The Delaware Supreme Court Opinion determined that "Storick waived his right to challenge execution of the Delaware judgment—**on a debt which he continues to admit he owes**—in Delaware."[22]

---

[17] *See* ECF No. 26, Exhibit Q.

[18] *See* Delaware Order at page 1.

[19] This was the precise issue that the Florida District Court declined to determine.

[20] ECF No. 26, Exhibit R.

[21] *See* ECF No. 26, Exhibit S (the "Delaware Supreme Court Opinion").

[22] *See id.* at p. 13 (emphasis added).

There is no indication from the record that Storick ever argued in the Delaware Litigation or Florida Litigation that the CFG Debt was or should have been discharged in the 2009 Bankruptcy Case.

III.    Procedural History

A.    The CFG 2018 Claim

On May 12, 2018, Storick filed the bankruptcy case (the "2018 Bankruptcy Case") underlying this Adversary Proceeding. Despite prior approval of the Amended Settlement in the 2009 Bankruptcy Case and liquidation of the CFG Debt via the Delaware Judgment, Storick scheduled the obligation as a disputed debt in an unknown amount.[23] On July 20, 2018, CFG filed Claim No. 1-1 (the "CFG 2018 Claim") in the 2018 Bankruptcy Case in the amount of $742,551.67. In support of the CFG 2018 Claim, CFG included a statement detailing the amount of the Delaware Judgment, interest, and post-judgment payments received by CFG.[24]

B.    The Adversary Proceeding

On November 21, 2018, Storick commenced this Adversary Proceeding seeking (i) declaratory relief stating that the CFG Debt was discharged in the 2009 Bankruptcy Case as count I of the complaint (the "Complaint") and (ii) damages for CFG's purported violation of the discharge order entered in the 2009 Bankruptcy

---

[23] See ECF No. 10 in Case No. 18-15728, at p.10 (Amended Schedule E/F, Claim 4.20).

[24] The CFG 2018 Claim also included copies of the Delaware Judgment, the Delaware Trial Court docket, receipts for payment, and other documentation pertinent to the claim.

Case as count II.[25] On January 11, 2019, after a consensual extension of time to file a response, CFG filed the Converted Motion. In the Converted Motion, CFG argued that (i) the equitable principle of laches bars the claims asserted in the Complaint and (ii) the doctrine of res judicata likewise prohibits Storick's prosecution of the Complaint.[26]

The Court entered an order directing briefing upon the Converted Motion, and the parties subsequently filed the Response and Reply, followed by the Cross-Motion, Cross-Response, and Cross-Reply. Upon receipt of all relevant briefing, the Court took the Converted Motion and the Cross-Motion under advisement.

## ANALYSIS AND CONCLUSIONS OF LAW

### I.    Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I).

### II.    Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, the Court shall grant summary judgment "if the movant shows that there is no genuine dispute

---

[25] ECF No. 1, at ¶¶ 42-54. Although paragraphs 45-47 and the related "wherefore" clause seek no less than 22 separate requested findings and legal conclusions, the requested relief boils down to a declaration that the CFG Debt was or should have been discharged in the 2009 Bankruptcy Case.

[26] Although the Converted Motion argued collateral estoppel as an independent basis for dismissal of (or summary judgment on the claims in) the Complaint, collateral estoppel (a.k.a. issue preclusion) is simply one form of res judicata. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549-50 n.3 (11th Cir. 1990) (discussing concepts of res judicata, claim preclusion, and issue preclusion); *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (11th Cir. 1993) (describing collateral estoppel).

as to any material fact and the movant is entitled to judgment as a matter of law."

"When deciding summary judgment, the Court may look to materials in the record

such as depositions, documents, affidavits or declarations, and admissions." *Certain*

*Interested Underwriters at Lloyd's, London v. AXA Equitable Life Ins. Co.*, 981 F.

Supp. 2d 1302, 1305-06 (S.D. Fla. 2013) (*citing* Fed. R. Civ. P. 56(c)). The Court "must

view all the evidence and all factual inferences reasonably drawn from the evidence

in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's*

*Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997); *Diaz v. Amerijet Int'l,*

*Inc.*, 872 F. Supp. 2d 1365, 1368 (S.D. Fla. May 25, 2012) (quoting same); *see also*

*Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013).  Finally, the moving party

"always bears the initial responsibility of informing the . . . court of the basis for its

motion, and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted); *see also*

*Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314-15 (11th Cir.

2011) (quoting same).

## III.   <u>Laches</u>

Because Storick's request for declaratory relief is equitable in nature,

equitable defenses apply. *Boone v. Corestaff Support Servs., Inc.*, 805 F. Supp.2d

1362, 1371 (N.D. Ga. 2011) (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 155 (1967)

(abrogated on other grounds)). The equitable doctrine of laches will bar a claim when

(1) the claimant delayed in asserting the right or a claim; (2) the delay was not excusable; and (3) the party against whom the claim is asserted will suffer undue prejudice as a result. *Venus Lines Agency, Inc. v. CVG Int'l Am, Inc.*, 234 F.3d 1225, 1230 (11th Cir. 2000).[27] Whether laches operates to bar a claim "depends upon the circumstances of [a] case and is a question primarily addressed to the discretion of the trial court." *Envtl. Def. Fund, Inc. v. Alexander*, 614 F.2d 474, 478 (5th Cir. 1980) (internal quotation marks and citation omitted).

Rarely has the Court seen a more clear-cut situation demanding the application of laches. Storick waited almost ten years before asserting that the CFG Debt was discharged in the 2009 Bankruptcy Case. During this time, he litigated vigorously against CFG in two different fora. There is no excuse for Storick's delay in challenging the dischargeability of the CFG Debt. There is no doubt that CFG has been (and continues to be) unduly prejudiced by Storick's ten-year delay in seeking declaratory relief that directly contradicts the explicit terms of the Amended Settlement.

Although the Court will not assign motive where it may not exist, the Complaint exhibits next-level gamesmanship. Storick's arguments have pivoted from garnishment to dischargeability, but the basis for the attempt remains fixed: avoidance of an obligation that Storick explicitly agreed to bear in the Amended

---

[27] At least one bankruptcy court within this district has employed a two-part test in its analysis of laches. The Court notes, however, that both tests are largely coextensive and simply arrange the elements in a slightly different order. *In re Hawkins,* 377 B.R. 761, 768 (Bankr. S.D. Fla. 2007). Both versions of the laches test question: (1) the existence of a delay in bringing a claim, (2) the reasonableness of any delay, and (3) harm to the opposing party. *Compare Alexander*, 614 F.2d at 478 *with Hawkins*, 377 B.R. at 768.

Settlement. As a result of the passage of time and extensive litigation between the parties in which the non-dischargeability of the CFG Debt was never raised, the doctrine of laches firmly bars the relief sought in the Complaint.

Accordingly, the Court determines that the doctrine of laches bars summary judgment in favor of Storick and mandates summary judgment in favor of CFG. Other equitable defenses strongly support this conclusion.

## IV.    Equitable Estoppel

Principles of "fair play and essential justice" dictate application of equitable estoppel to the allegations in Storick's Complaint. *Starbuck v. R.J. Reynolds Tobacco Co.*, 349 F. Supp. 3d 1223, 1228 (M.D. Fla. 2018) (citing *Florida Dep't of Health & Rehab. Servs. v. S.A.P.*, 835 So.2d 1091, 1096 (Fla. 2002)). Equitable estoppel is appropriate when (1) a party makes a representation regarding a material fact that is contrary to a later-asserted position, (2) another party relies on that representation in good faith, and (3) the relying party experiences a detrimental change in position as a result of reasonable reliance upon the representation. *Starbuck*, 349 F. Supp. 3d at 1228.

Equitable estoppel is "designed to aid the law in the administration of justice where without its aid injustice might result." *Deshong v. Seaboard Coast Line R.R. Co.*, 737 F.2d 1520, 1522 (11th Cir. 1984); *Marine Transp. Servs. Sea-Barge Group, Inc. v. Python High Performance Marine Corp.*, 16 F.3d 1133, 1138 (11th Cir. 1994) (quoting same). Equitable estoppel may preclude a litigant who has made representations of fact through words or conduct from asserting rights that

13

otherwise might have existed absent such words or conduct. *Marine Transp.* 16 F.3d at 1139 (quoting *Oxford Shipping Co. v. New Hampshire Trading Corp.*, 697 F.2d 1, 4 (1st Cir. 1982)). Key to the Court's application of equitable estoppel is the reasonableness of the second party's reliance upon the representation in question. *DeShong*, 737 F.2d at 1522 ("[A] plaintiff should not be permitted to assert formally the existence of one state of facts in a claim against one party and accept benefits in satisfaction of that claim, and then maintain an action against another party on the ground that the facts first asserted did not exist.").

All elements of equitable estoppel are present. Storick's agreement to the inclusion of the Non-Dischargeability Provision in the Amended Settlement and his counsel's representations to the prior bankruptcy court at the Settlement Hearing unequivocally demonstrate that both parties knew and understood that the CFG Debt would be treated as non-dischargeable in the context of the 2009 Bankruptcy Case. *See* Exhibit M (Settlement Hearing Transcript).

In addition, the parties explicitly agreed that CFG would be granted relief from the automatic stay to pursue entry of the Delaware Judgment. *See* Exhibit N (Settlement Order), at ¶ 3; *see generally* Settlement Hearing Transcript. CFG subsequently petitioned the Delaware Trial Court precisely as anticipated in the Amended Settlement. Storick failed to contest entry of the Delaware Judgement and likewise neglected to raise the issue of dischargeability in either the Delaware Litigation or the Florida Litigation.

CFG reasonably relied upon Storick's (i) agreement to the Amended

14

Settlement (including the Non-Dischargeability Provision and Judgment Provision), (ii) joint request with CFG for court approval of the Amended Settlement, (iii) acquiescence to entry of the Delaware Judgment, and (iv) failure to challenge the dischargeability of the CFG Debt in either the Delaware Litigation or the Florida Litigation. CFG's reasonable reliance upon the provisions of the Amended Settlement and Storick's failure to question the non-dischargeability of the CFG Debt (until now) has resulted in detriment to CFG in the form of this Adversary Proceeding and undoubtedly saddled CFG with many years' worth of attorneys' fees from the Delaware Litigation and the Florida Litigation.

Accordingly, the Court finds and holds that Storick is equitably estopped from asserting that the CFG Debt was or should have been discharged in the 2009 Bankruptcy Case. Because other bases exist for summary judgment in CFG's favor, however, the Court will continue its analysis.

V.    Res Judicata (Claim Preclusion and Issue Preclusion)

Res judicata principles prevent this Court from determining issues previously decided by a forum of competent jurisdiction. "The preclusive effect of a judgment is defined by claim preclusion[28] and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor*, 553 U.S. at 892. A prior judgment can bar subsequent litigation in two ways, with the difference between the two forms of prohibition linked to whether the subsequent claim arises from the same or a different cause of action.

---

[28] Although prior case law within this Circuit may use the terms "res judicata" and "claim preclusion" interchangeably, *Justice Oaks* clarifies that claim preclusion refers to one subset of res judicata. *Contrast I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986) *with Justice Oaks*, 898 F.2d at 1549-50 n.3.

*Justice Oaks*, 898 F.2d at 1549-50 n.3.

A.    Claim Preclusion

Claim preclusion bars a subsequent lawsuit where a court of competent jurisdiction has previously rendered a final judgment on the merits in a case involving identical parties and the same cause of action. *Citibank, N.A. v. Data Lease Fin. Corp.,* 904 F.2d 1498, 1501 (11th Cir. 1990). Claim preclusion is broader than the closely related concept of "law of the case" in that it bars relitigation not only of the legal issues actually raised in an earlier proceeding, but also of claims that *could have* been raised in the prior litigation. *Justice Oaks*, 898 F.2d at 15 n.3.[29]

The following elements must be present for claim preclusion to apply: "(1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved both cases." *Citibank*, 904 F.2d at 1501 (internal quotation marks and citation omitted). Claim preclusion operates to prohibit relitigation of the legal theories presented in the prior case as well as all legal theories and claims arising out of the same nucleus of operative facts. *Seminole Tribe of Fla. v. Biegalski*, 757 F. App'x 851, 856–57 (11th Cir. 2018).

The parties do not dispute that (1) the Settlement Order is final and non-appealable, (2) the United States Bankruptcy Court for the Southern District of Florida was a court of competent jurisdiction for the 2009 Bankruptcy Case, (3) the

---

[29] Another important distinction is that the law of the case "bars relitigation of legal rules" while claim preclusion "bars relitigation of claims (i.e., legal rules applied to facts of the case)." *Id.*

parties involved in the Amended Settlement (Storick and CFG) are identical to those involved in the present litigation, and (4) the Amended Settlement addresses the issue of the dischargeability of the CFG Debt. On the surface, it appears that all elements of claim preclusion are satisfied.

The difficult nuances arise from consideration of (i) whether the 2009 Bankruptcy Case and the 2018 Bankruptcy Case may be viewed as involving the "same" cause of action, and (ii) whether the Settlement Order suffices as a final determination on the merits of the factual underpinnings of non-dischargeability. As a result, the Court sets aside its analysis of claim preclusion and turns instead to application of issue preclusion.

B.    Issue Preclusion (Collateral Estoppel)

"Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a full and fair opportunity to litigate that issue in an earlier case." *St. Laurent*, 991 F.2d at 675 (internal quotation omitted). Issue preclusion is arguably even broader than claim preclusion because it prevents relitigation of the same issue in a different cause of action.

Under Florida law, the following elements must be met for collateral estoppel to apply: "(1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior

17

action must have been at least as stringent as the standard of proof in the later case." *Id.* at 676. Collateral estoppel principles apply in nondischargeability proceedings under 11 U.S.C. § 523(a). *Id.* at 675 (citing *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991)).

Collateral estoppel applies to this Adversary Proceeding.

First, the issue presently at stake, the dischargeability of the CFG Debt, is identical to the issue determined in the 2009 Bankruptcy Case. The Non-Dischargeability Provision clarified that, by entering into the Amended Settlement, Storick agreed that the CFG Debt would be treated as non-dischargeable, even though he may have disputed the characterization of the obligation as one that was inherently non-dischargeable.[30]

Second, the dischargeability of the CFG Debt was clearly a point of contention in the 2009 Bankruptcy Case. Although CFG never filed an adversary proceeding to determine whether the CFG Debt was dischargeable, the parties agreed to extend the time for CFG to do so while they negotiated a consensual resolution of that and other issues. The parties' agreement to and presentation of the Amended Settlement to the bankruptcy court for approval in the 2009 Bankruptcy Case obviated the need for CFG to file an adversary proceeding seeking relief under 11 U.S.C. § 523.

Third, the prior determination of the non-dischargeability of the CFG Debt, by virtue of the parties' agreement to the Non-Dischargeability Provision, was a critical and necessary part of the Settlement Order.

---

[30] *Compare* Non-Dischargeability Provision *with* recital provisions of Amended Settlement at pp. 2-3.

Case 18-01455-MAM    Doc 76    Filed 01/13/20    Page 19 of 22

Finally, the standard of proof regarding non-dischargeability at the time of the 2009 Bankruptcy Case was identical to the present standard of proof. *Grogan,* 498 U.S. at 289 (1991) (preponderance of the evidence standard applies in 11 U.S.C. § 523 nondischargeability actions).

All elements of collateral estoppel are met, and the Court concludes that summary judgment should be granted in CFG's favor. In light of the complexity attendant to any determination regarding non-dischargeability, however, the Court will address Storick's procedural arguments.

VI.    <u>Procedural Arguments</u>

Storick strenuously argues that CFG's failure to insist upon the formality of an adversary proceeding in the 2009 Bankruptcy Case transforms entry of the Settlement Order into "legal error." On that basis, Storick further contends that the 2018 CFG Claim is presently dischargeable.

In the context of the CFG Debt and the many years of litigation that have transpired since entry of the Settlement Order, the Court must disagree. If the Court were to insist upon the existence of a prior adversary proceeding in the 2009 Bankruptcy Case at this juncture it would elevate form over substance. Although the Court can envision circumstances where a debtor might unwittingly or unknowingly agree to the characterization of a debt as non-dischargeable, that is simply not the case here.[31]

---

[31] The Court is hesitant to suggest or imply that parties may simply contract away procedural protections established by the Bankruptcy Code without clarity on all sides regarding the long-term implications. Accordingly, the Court's rationale herein is limited to the unique set of facts and circumstances presented in the Converted Motion and the Cross-Motion, with particular emphasis

Storick is the quintessential "sophisticated" litigant. He has, over the course of nearly a decade, employed several different attorneys with one goal: contest the enforceability of the CFG Debt. Every attorney employed by Storick since the 2009 Bankruptcy Case has merely attacked the means of collection upon the agreed-upon CFG Debt originally solidified by approval of the Amended Settlement.

Storick's contention, that failure to reaffirm the CFG Debt via the mechanisms established by 11 U.S.C. § 524 renders the debt dischargeable, is disingenuous and fails to consider the reason why Congress established reaffirmation standards. The procedural safeguards required for reaffirming a debt are not absolute. The primary reason for court inquiry is simply to ascertain whether the debtor has knowingly and willingly agreed to reaffirm the obligation in question. Where a debtor is represented by counsel, and counsel represents to the court that a proposed reaffirmation does not present an undue hardship, the court does not undertake an extensive fact-based presentation to verify the attorney's representation. Instead, the Court accepts counsel's proffer as an officer of the court and proceeds accordingly.

In the context of the 2009 Bankruptcy Case, Storick's bankruptcy counsel indicated that entry into the Amended Settlement was Storick's desire and that approval of the Amended Settlement was in Storick's best interests. The court in the 2009 Bankruptcy Case evaluated all facts, representations, and circumstances at that time and determined that approval of the Amended Settlement satisfied the

---

given to Storick's status as a sophisticated businessman. For clarity, the Court cautions that this Order should not be viewed as ratification of **all** contractual provisions that purportedly prevent debt from being discharged.

appropriate legal standards. *See* Exhibit M (Settlement Hearing Transcript); *see also* ECF No. 171 in the 2009 Bankruptcy Case (Transcript of May 8, 2010 Hearing), at pp. 16:16-17:8, 18:6-13, and 24:14-17. This Court cannot (and will not) look behind the Settlement Order to determine whether Storick's counsel's representations were accurate or, in the alternative, whether the prior bankruptcy court committed "legal error". The time for appeal of the Settlement Order has passed, and this Court is not the appropriate venue for such inquiry.

## CONCLUSION

The non-dischargeability of the CFG Debt has been determined by prior court order and confirmed by Storick's conduct over the course of many years of complex litigation in two states. A businessman who willingly entered into a settlement negotiated by experienced counsel of his choosing, Storick has employed every tool in his arsenal to distance himself from the impact of his own court-approved agreement. Although he has led CFG on a merry chase over many years, deftly side-stepping the non-dischargeability of an obligation that he explicitly agreed to, the dance ends here. The Delaware Judgment is a valid judgment. Based upon all facts and circumstances, the Court finds and determines that the CFG 2018 Claim is and remains non-dischargeable in this Bankruptcy Case.

## ORDER

Accordingly, the Court, having considered all relevant pleadings, including but not limited to the Converted Motion, Response, Joint Stipulation, Reply, Cross-Motion, Cross-Response, Cross-Reply, and all supplemental briefing submitted by

Plaintiffs and Defendants, the record of this Adversary Proceeding, the record of both of Storick's bankruptcy cases, and being otherwise fully advised in the premises, **ORDERS AND ADJUDGES** that:

1. The Court **GRANTS** summary judgment (ECF No. 13) in favor of CFG as to all counts of the Complaint.

2. The Court **DENIES** the Cross-Motion (ECF No. 28).

3. The Court reserves jurisdiction over all matters arising from or related to the interpretation or implementation of this Order.

4. The pre-trial conference hearing scheduled for January 14, 2020 at 10 a.m. is cancelled.

###

Copies Furnished To:

Christian Panagakos, Esq.

Noel R. Boeke, Esq.

*Attorney Boeke is directed to serve this Opinion and Order upon all interested parties and file a conforming certificate of service.*